## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROBIN C. TOLVIN,

Plaintiff,

v.

JOSEPH J. DOUGHERTY, et al.,

Defendants.

Civil Action No. 19-15292 (MAS) (ZNQ)

**MEMORANDUM ORDER**

This matter comes before the Court upon the Court's review of Defendant Joseph J. Dougherty's ("Defendant")[1] Removal of Plaintiff Robin C. Tolvin's ("Plaintiff") Application for Temporary Injunctive Relief from the Superior Court of New Jersey, Chancery Division, Monmouth County. (Def.'s Notice of Removal, Ex. 1 ("OSC Documents"), ECF No. 1.)[2] On June 26, 2019, prior to removal, the Superior Court entered an Order to Show Cause as to why temporary restraints should not be entered. (OSC Documents 6-10.) Defendant subsequently removed the matter to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, stating that complete diversity exists and the amount in controversy exceeds $75,000.[3] (*Id.* at 2-3 ¶¶ 6-11.)

The Court has carefully considered Plaintiff's application and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies

---

[1] Lucas Mignone and Wells Fargo Bank, N.A. are also named as defendants, however, they did not take part in removing the matter.

[2] Defendant filed the Notice of Removal and underlying state court documents as a single document. Due to the length of the submission, and for clarity, the Court cites to the pagination as represented on the ECF system.

[3] Defendant provides that Plaintiff is a citizen of New Jersey, Defendants Doughty and Mignone are citizens of New York, and Wells Fargo Bank, N.A. is a citizen of South Dakota. (*Id.* at 2-3 ¶¶ 6-9.)

Plaintiff's application for temporary restraints. The Court, however, orders the parties to submit a joint proposed expedited briefing schedule and perform expedited discovery to precede a preliminary injunction hearing.

## I. Background

Plaintiff's Complaint provides the following factual allegations.[4] Defendant is Plaintiff's nephew. (OSC Documents 12-13 ¶¶ 2, 7, ECF No. 1.) In September 2018, Defendant told Plaintiff he was leaving his job as an associate at Duval & Stachenfeld, LLP "to take a job as general counsel for REM Technology Consulting Services, Inc." ("REMTCS"). (*Id.* ¶ 9.) Defendant told Plaintiff that REMTCS would not pay Defendant a salary but instead would compensate Defendant based on the amount of new business he generated. (*Id.* ¶ 11.) Plaintiff loaned Defendant $300,000 for living expenses to support Defendant while he attempted to bring in new business for REMTCS. (*Id.* ¶¶ 13-16.)

In November 2018, Defendant told Plaintiff "he had the opportunity to invest in REMTCS and that the minimum individual investment was $5,000,000." (*Id.* ¶ 17.) Defendant further told Plaintiff "she could invest $1,600,000 in REMTCS under the umbrella of his shares." (*Id.* ¶ 18.) Plaintiff learned that she could withdraw that sum from her JP Morgan Chase Bank, N.A. IRA accounts, but that those withdrawals would create "significant federal and New York State tax liability." (*Id.* ¶ 19.) Plaintiff notified Defendant of those tax liabilities, and Defendant told Plaintiff he "would take care of" them. (*Id.* ¶ 20.) Plaintiff, therefore, withdrew $1,600,000 from two IRA accounts and wired that sum from her JP Morgan Chase Bank, N.A. account to Defendant's bank account. (*Id.* ¶ 21.)

---

[4] The Court writes for the benefit of the parties and therefore only recites those facts necessary to resolve the instant application.

Later, Plaintiff asked Mignone several times whether REMTCS's president, Richard Malinowski ("Malinowski"), was aware that she invested in his company, and Mignone stated that Malinowksi was aware of her investment. (*See, e.g., id.* ¶¶ 29-34, 37.)[5] Defendant also confirmed with Plaintiff that she had invested in REMTCS and reiterated his agreement to pay Plaintiff's tax liability. (*Id.* ¶¶ 37-39.)

"As of April 15, 2019, Defendant . . . did not provide . . . Plaintiff with any money to pay the tax liabilities that she had as a result of withdrawing $1,600,000 from her IRAs." (*Id.* ¶ 41.) Plaintiff owes $552,658 in federal taxes and $199,456 in New York State and City taxes. (*Id.* ¶¶ 43-44.) Defendant also has not repaid Plaintiff for her $300,000 loan. (*Id.* ¶ 49.)[6] Plaintiff's instant application seeks an order temporarily restraining Defendant from withdrawing or releasing funds from any of Defendant's bank accounts, as well as requiring Defendant to provide Plaintiff with copies of his bank records and statements from September 1, 2018 to the present. (Pl.'s Moving Br. 40.)

## II.   **Legal Standard**

"The Supreme Court [has] held that [a] [TRO] should be treated as a preliminary injunction." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). Because the grant of injunctive relief is "an extraordinary remedy[,]" a TRO "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)

---

[5] Plaintiff alleges that Mignone previously worked with Defendant at Duval & Stachenfeld, LLP, and that Mignone told Plaintiff he also began working at REMTCS; however, "Mignone was not an employee of REMTCS authorized to make statements on behalf of REMTCS or . . . Malinowski . . . ." (*Id.* ¶¶ 28, 35.)

[6] Plaintiff attached to her application exhibits in support of the following allegations: (1) Shortly after receiving the $1,600,000 from Plaintiff, Defendant spent $300,000 to rent a house in East Hampton, New York (*id.* at 98 ¶¶ 17-18); (2) In December 2018, Defendant gave his sister money to purchase two BMWs (*Id.* at 44 ¶ 21); and (3) In correspondence on behalf of Malinowski's counsel, notice that REMTCS never received money from Plaintiff (*Id.* at 95).

(internal quotation marks and citation omitted). This remedy "should be granted only if '(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.'" *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). The Third Circuit has further instructed that a party seeking a TRO must meet all four factors, because "[a] [movant's] failure to establish any element in its favor renders [this remedy] inappropriate." *Id.*

## III. Discussion

Plaintiff argues that Defendant "stole so much money from her that she now faces financial ruin." (Pl.'s Moving Br. 36.) As such, Plaintiff argues she requires immediate temporary injunctive relief to: (1) "stop [Defendant] from spending any more of her money before all of her money is gone"; and (2) "find out what [Defendant] did with her money so she can find any money that remains unspent and locate any assets [Defendant] purchased with her money that she can recover." (*Id.*)

The Court finds Plaintiff failed to sufficiently establish immediate irreparable harm. Although Plaintiff's factual allegations are sympathetic, the Court cannot grant Plaintiff the extraordinary relief she seeks solely based upon monetary damages. Indeed, Plaintiff explicitly noted that "[t]he subject matter of this litigation is the money that [Plaintiff lost]" and "[i]f the Court does not grant the temporary injunctive relief that [Plaintiff] requests, there is the real risk that, if any of [Plaintiff's] money remains unspent, more of her money will be spent by [Defendant] and lost to [Plaintiff]." (*Id.* at 39.) Third Circuit precedent is clear, however, that "purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" when a plaintiff "has failed to articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages . . . ." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors*

4

*Corp.*, 847 F.2d 100, 102-03 (3d Cir. 1988) (citation and alteration omitted) ("Although we are not insensitive to the financial distress suffered by the plaintiff, we do not believe that the loss of income alone constitutes irreparable harm."); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 n.7 (3d Cir. 1989) (noting that even under the *Crowe v. DeGioia*[7] standard, parties must demonstrate harm cannot be redressed by monetary damages under the irreparable harm prong); *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.4 (3d Cir. 2017) ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm."). Here, Plaintiff fails to support her application with any allegations other than her economic injury, and therefore, the Court denies Plaintiff's application for temporary restraints.

The Court, however, finds good cause to allow Plaintiff the opportunity to present her arguments at a preliminary injunction hearing. In advance of that hearing, the parties may conduct expedited discovery, and must provide the Court with briefs supporting their respective positions.

**IV.    Conclusion**

The Court denies Plaintiff's application for temporary restraints. The Court, however, will conduct a preliminary injunction hearing. Prior to the preliminary injunction hearing, the parties may engage in discovery, and must submit to the Court legal briefing and documentation supporting their respective positions.

**V.    Order**

For the reasons set forth above, and for other good cause shown,

**IT IS** on this 16th day of July 2019, **ORDERED** that:

1.   Plaintiff's Motion for a Temporary Restraining Order (ECF No. 1) is **DENIED**.

2.   The Court requires the parties to engage in expedited discovery.

---

[7] *DeGioia* sets forth the standard by which New Jersey courts determine whether temporary restraints should be granted. 447 A.2d 173 (N.J. 1982).

3. The Court will conduct a preliminary injunction hearing on a date to be set forth in a subsequent order.

4. By **July 22, 2019**, the parties must submit a joint proposed scheduling order. If the parties are unable to agree to a joint proposed scheduling order, by **July 22, 2019**, the parties must submit separate proposed scheduling orders.[8]

5. This Court will address any schedule-related requests regarding the preliminary injunction hearing. Any discovery disputes should be raised before the magistrate judge.

s/Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[8] The parties should e-file their proposed scheduling order(s) as an attachment to correspondence.